UNITED STATES of America, Appellee,

v.

Jay Martin ROSEN,
Defendant, Appellant.

No. 90–1650.

United States Court of Appeals,
First Circuit.

Heard Jan. 7, 1991.

Decided April 5, 1991.

Rehearing Denied April 29, 1991.

Richard S. Emerson, Jr., with whom Childs, Emerson, Rundlett, Fifield & Childs, Portland, was on brief, for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., Portland, Me., with whom Richard S. Cohen, U.S. Atty., Augusta, Me., and William H. Browder, Jr., Asst. U.S. Atty., Bangor, Me., were on brief, for U.S.

Before CAMPBELL and CYR, Circuit Judges, and POLLAK,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

This is another appeal resulting from an undercover operation conducted in the fall of 1988, when state and federal law enforcement officers infiltrated a marijuana importation network in Maine. *See United States v. Panitz,* 907 F.2d 1267 (1st Cir. 1990) (appeals of defendants Solomon Philip Panitz and Andrew Stewart Baumwald). Appellant Jay Martin Rosen was indicted with others on charges of conspiracy to possess with intent to distribute in excess of 50 kilograms of marijuana, a schedule I controlled substance listed in 21 U.S.C. § 812 (Count I), and of aiding and abetting in that offense (Count III), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).[1] In a consolidated pretrial suppression hearing, Rosen unsuccessfully requested the court to suppress the marijuana found in the car he was driving when arrested, and certain

---

* Of the Eastern District of Pennsylvania, sitting by designation.

1. The indictment charged Rosen with codefendants Andrew Stewart Baumwald and Antonina M. Dinolfo. Only Counts I and III pertain to Rosen. By order of the district court dated May 26, 1989, the indictment against Rosen and his codefendants was consolidated for trial with *United States v. Panitz, et al.,* Criminal No. 89–0003–P, *United States v. Joseph John Frisone,* Criminal No. 89–0004–P, and with *United States v. Robert Berzon, et al.,* Criminal No. 89–0005–P, in the United States District Court for the District of Maine. 1989 WL 58696. The charges in all these indictments arose from interwoven events, *infra.*

statements made to the arresting police officer.[2] Rosen also moved unsuccessfully to dismiss the indictment for outrageous police conduct. After the court rejected the suppression and dismissal motions, Rosen entered a conditional guilty plea to Count I pursuant to Fed.R.Crim.P. 11(a)(2),[3] and the court dismissed Count III on the government's motion. At sentencing, the judge calculated Rosen's "Base Offense Level" from the amount of marijuana found in Rosen's car (150 pounds). Rosen was sentenced on June 18, 1990 to 51 months imprisonment, a three-year term of supervised release, and a $50 fine.

Rosen now asserts as errors the district court's (1) denial of his motions to suppress evidence and statements; (2) denial of his motion to dismiss the indictment for outrageous police conduct; and (3) basing of the sentence on the amount of marijuana seized (150 pounds) rather than on a lesser amount Rosen had bargained for earlier.

## I. BACKGROUND

On November 22, 1988, Rosen was arrested with Andrew Stewart Baumwald as they headed south toward Boston on the Maine Turnpike in a BMW automobile carrying 150 pounds of marijuana in its trunk. They were part of a marijuana distribution network led by one Michael Goldin, who had arranged to have a 10,000 pound shipment of marijuana smuggled from Colombia. Unbeknownst to Goldin, the shipment was intercepted by the U.S. Coast Guard before its arrival in Maine, and the marijuana was taken into the possession of the Drug Enforcement Administration (DEA). The DEA agents, posing as smugglers, then contacted Goldin with the news that the marijuana had arrived in Maine. Goldin inspected it and induced a number of customers and their drivers, including Rosen, to drive to Maine to procure marijuana. We described as follows what next ensued in *United States v. Panitz:*[4]

> Goldin devised a plan for distributing the marijuana. He would make a series of vehicles available to his accomplices (agents all), turning over the keys. The agents would drive each vehicle, as received, to the place where the marijuana was being stored, stuff it with whatever amount of marijuana Goldin specified, park at a prearranged spot, and return the keys to Goldin. The smuggler [Goldin] would then complete the transaction with the customer, exchanging a drug-laden vehicle for the balance of the agreed price.

907 F.2d at 1269. (Footnote omitted). The loaded vehicles were kept under constant surveillance by the agents, and when the cars were claimed and driven away by the customers they were followed. At a point along the road, uniformed officers stopped the vehicles, searched them, seized the contraband and arrested the occupants. At 2:30 p.m. on November 22, Rosen and Baumwald entered their BMW which had been loaded with 150 pounds of marijuana. As they headed south on the Maine Turnpike, they were stopped, the BMW was searched, the marijuana was seized and they were arrested.

In *Panitz* this court reviewed two of the same issues Rosen now raises: the legality of the warrantless search of the BMW and of the police's allegedly outrageous conduct in planning and conducting this "sting" operation. We sustained the vehicular search under the "automobile" exception. 907 F.2d at 1270–1272. We also held that the utilized law enforcement practices were neither fundamentally unfair nor of-

---

**2.** The district court's opinion on the motion to suppress evidence is reported as *United States v. Baumwald, et al.,* 720 F.Supp. 226 (D.Me.1989).

**3.** Fed.R.Crim.P. 11(a)(2) reads:

With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty ... reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. A defendant

who prevails on appeal should be allowed to withdraw the plea.

**4.** As previously noted, our *Panitz* decision involved appeals by Rosen's companion, Baumwald, and by Solomon Philip Panitz, another would-be customer of Goldin who was indicted in the same general scheme (although using a different vehicle). *United States v. Panitz,* 907 F.2d 1267.

fensive to principles of due process. *Id.* at 1273. We now turn to Rosen's contentions.

## II. MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

### A. *The Automobile Search*

█ Rosen argues that the marijuana seized from the trunk of his vehicle was the fruit of an illegal search and should have been suppressed. Having considered the identical question in companion Baumwald's appeal, *Panitz,* 907 F.2d at 1271–1272, we are not persuaded that the search was improper nor are we any more persuaded than before that the district court erred in allowing the marijuana to be used as evidence. Thus, for the reasons stated in *Panitz,* we reject this claim of error.[5]

### B. *Statements after Arrest*

█ After Rosen was stopped on the Maine Turnpike and the car was searched by Agent Bryfonski, Rosen and Baumwald were arrested. Bryfonski administered *Miranda* warnings to Rosen, and Rosen indicated that he understood them. Rosen then answered a number of questions posed by Bryfonski about where he had obtained the marijuana and whether he was under direction to make any telephone calls to anyone at that time. Rosen now argues that these statements should have been suppressed because he never indicated to Agent Bryfonski that he was waiving his rights. The district judge found, however, that Rosen had explicitly waived his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Reviewing the district court's findings under the strict "clearly erroneous" standard, *United States v. Walker,* 924 F.2d 1

(1st Cir.1991); *United States v. Jobin,* 535 F.2d 154, 156 (1st Cir.1976), we find no error. The district judge's decision was based primarily on Agent Bryfonski's testimony at the suppression hearing, where he testified that after the *Miranda* warnings were read, Rosen appeared to understand those rights, and that he asked Rosen if he was going to answer any questions. Bryfonski then stated that "[h]is acknowledgement to me was that he was willing to answer questions." This sworn testimony of the agent supports the district judge's finding of consent by Rosen to answer questions, and the judge's conclusion that the statements were admissible. The district court's findings, as well as its decision to credit Bryfonski's testimony, are owed deference by reviewing courts. *See Jackson v. Denno,* 378 U.S. 368, 390–391, 84 S.Ct. 1774, 1788, 12 L.Ed.2d 908 (1964). We find no error by the district judge in refusing to suppress Rosen's statements to Bryfonski.[6]

## III. OUTRAGEOUS POLICE CONDUCT

During pretrial proceedings, Rosen and his codefendants unsuccessfully moved to dismiss the indictments on the basis of outrageous government conduct. At issue in *Panitz* was the same motion to dismiss that Rosen now claims should have been granted. We defer to our discussion in *Panitz,* 907 F.2d at 1272–1274, and hold that the district court did not err. *See* n. 5, *supra.*

## IV. BASE OFFENSE LEVEL

█ Rosen's final contention is that the quantity of drugs loaded by the undercover agents into the vehicle he was driving

---

**5.** We agree with the Fifth Circuit that:

    a decision of a legal issue or issues by an appellate court establishes the "law of the case" and must be followed in all subsequent proceedings in the same case in the trial court or a later appeal in the appellate court, unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.

*White v. Murtha,* 377 F.2d 428, 431–432 (5th Cir.1967). Here Rosen was a party to the same suppression hearing as his companion Baumwald, thus his search and seizure argument is based on identical evidence. There have been no relevant changes in the law since *Panitz* nor do we believe our decision in that case to have been erroneous or unjust. Accordingly, we follow that decision here.

**6.** Rosen does not now challenge other statements that he allegedly made to the police officers before and after his arrest.

should not have been used to tabulate the base offense level for purposes of sentencing. At sentencing, defendant's counsel explained that Rosen negotiated, paid for, and expected to receive only 30 pounds of marijuana. However, Rosen was notified by the agents acting undercover, at the time he went to the parking lot to retrieve the BMW on November 22, that they had loaded the car with 150 pounds of marijuana. Counsel for Rosen acknowledged that the defendant knew at the time he got into the car and "put the key in the switch" that he was transporting 150 pounds. At the time of sentencing, Rosen was held accountable for the full 150 pounds.[7] Rosen argues that the district court misconstrued § 1B1.3(a)(1) of the guidelines, which states in relevant part that the base offense level shall be determined on the basis of:

> all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense ...

The commentary to that section explains that:

> [i]n the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant 'would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly undertaken criminal activity that was reasonably foreseeable by the defendant.... Where it is estab-

lished that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake, such conduct is not included in establishing the defendant's offense level under this guideline.

U.S.S.G. § 1B1.3, comment. (n. 1).

Rosen claims that a defendant should be sentenced for the conduct of others only when the conduct is jointly undertaken criminal activity which was reasonably foreseeable by the defendant. Rosen further asserts that in the instant case "the conduct of others" is that of government agents who loaded the marijuana, and it must be excluded as relevant conduct because it is a legal impossibility for a defendant to jointly undertake criminal activity, or conspire with, a government agent. Moreover, Rosen argues that in order to appraise his responsibility in terms of a quantity of drugs, the court must determine what the defendant intended to negotiate and what he could reasonably foresee. The amount of marijuana in his trunk should not be relevant conduct because Rosen did not negotiate for nor could he reasonably foresee the extent of the marijuana load.

The difficulty with this argument is that, before retrieving the loaded car and setting out on his return journey, Rosen was told by an undercover agent, posing as an accomplice, that 150 pounds had been placed in the BMW's trunk. Section 1B1.3(a)(1) calls for consideration of all acts in "furtherance of the offense." Rosen accepted delivery of a car containing 150 pounds of

---

7. Even though not raised by the parties, we clarify a harmless mistake made at Rosen's sentencing hearing regarding the amount of marijuana. At sentencing, the district judge referred to the amount of marijuana for which Rosen was being sentenced as 150 pounds. For purposes of determining the base offense level from the drug quantity table, U.S.S.G. § 2D1.1(c), the judge determined that the amount translated into 51.8 kilograms, when it actually translates into 68.04 kilograms. The district judge, however, used the proper "base offense level" (22) corresponding to 68.04 kilograms, not 51.8 kilograms. With 51.8 kilograms Rosen's base of-

fense level would have been 20. Thus, while the conversion of pounds into kilograms was wrong, the ultimate result—a base offense level of 22—was correct.

With a load of marijuana of 150 pounds, a base offense level determined to be 22, a two point reduction for acceptance of responsibility, and a criminal history category of III, Rosen's applicable imprisonment guideline range was 41 to 51 months. He was sentenced to 51 months. Had the amount used to calculate the base offense level been 30 pounds, Rosen's imprisonment guideline range would have been 21–27 months.

marijuana with full knowledge that this was the quantity he would now be possessing.[8] The district court found that after Rosen was told that the car had been loaded with 150 pounds, he did not protest that he had bargained for only 30 pounds, nor did he take any steps to remove the excess amount from his car. Rather, as the court noted, "[w]hen he got in the car and put the key in the switch and turned it on, he knew he was transporting 150 pounds." Thus, while Rosen may have earlier negotiated for less, he knowingly accepted the greater amount. Counsel argued that it was too late for him then to have just walked away, but the court concluded that if Rosen had been unwilling "to do more than he had already committed himself to do, he did not have to make his situation worse by getting in the car and hauling more of the drugs than he understood he was going to [do]." The finding that, in effect, Rosen acted voluntarily, is not clearly erroneous, and is a sufficient predicate for holding him accountable for the 150 pounds that he consented to transport in the trunk of his car. Whether under the law of conspiracy he could conspire with a government agent is immaterial. It was not the "conduct of others" that was key. Rather, Rosen was held responsible for *his own* acceptance of the larger load of marijuana. We find no error, therefore, in the district court's decision to use the full load of marijuana found in Rosen's trunk for purposes of determining the base offense level.

*Affirmed.*

---

**8.** The prosecution requested that Rosen be charged with 400 pounds of marijuana, 150 pounds from his car and 250 pounds found in codefendant Dinolfo's car. The court, however, was of the opinion that, unlike the 150 pounds in his car, Rosen did not have control over the car driven by Dinolfo. Thus, while he knew that his codefendant was transporting 250 pounds of marijuana, that was not sufficient to involve him in punishment for that. With the 150 pounds the court found that he had knowledge and full control of the car.