UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2294

UNITED STATES,

Appellee,

v.

HOJATOLLAH TAJEDDINI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

Before

Breyer, Chief Judge,

Bownes, Senior Circuit Judge,

and Boudin, Circuit Judge.

Kenneth J. King, with whom Fenn & King, were on brief for

appellant.
Robert W. Iuliano, Assistant United States Attorney, with

whom A. John Papparlardo, United States Attorney, was on brief

for appellee.

June 3, 1993

BOWNES, Senior Circuit Judge. Defendant and his
BOWNES, Senior Circuit Judge.

wife, Lori Ann McBride, were indicted on charges of

conspiracy to import more than 100 grams of a mixture or

substance containing a detectable amount of heroin (Count

One), and importation of more than 100 grams of a mixture or

substance containing a detectable amount of heroin (Count

Two). Defendant's wife pled guilty prior to trial.

Defendant went to trial and a jury convicted him on both

counts.

I.

Prior Proceedings

This appeal comes to us via a 28 U.S.C. 2255

petition. After trial, defendant's counsel failed to file a

notice of appeal. Defendant, acting pro se, filed a series

of motions in the district court collaterally attacking the

verdict: a motion for a new trial based on ineffective

assistance of counsel; a motion for a new trial based on

newly-discovered evidence; a 2255 petition to vacate, set

aside or correct sentence; and a motion for return of seized

property. The district court denied all of defendant's post-

trial motions, and appeals from the denial of each motion

were properly filed. We consolidated all the appeals and

found that no relief was warranted on any of the motions

except for the claim of ineffective assistance of counsel for

failure to file a notice of appeal. We remanded that issue

-2-
2

for determination by the district court. United States v.

Tajeddini, 945 F.2d 458, 470 (1st Cir. 1991), cert. denied,

112 S. Ct. 3009 (1992). After a hearing, the district court

found that because defendant had dismissed his counsel prior

to the expiration of the appeal period there could be no

claim for ineffective assistance of counsel. The court went

on to hold, however, that defendant while proceeding pro se

had inadvertently failed to file a timely appeal and

reinstated defendant's right to appeal. It is this appeal

that we now consider.

There are three issues before us on appeal:

(1) whether the prosecutor's closing argument was proper;

(2) whether the district court erred in denying defendant's

motion for a continuance prior to the start of trial; and

(3) whether the district court erred in admitting into

evidence a statement by defendant.

II.

The Facts

We begin by recounting the salient facts as

disclosed at trial and in a pre-trial suppression hearing.

Defendant, his wife, and their two children, arrived in

Boston on October 20, 1988, after a flight from Frankfurt,

Germany. Because he was a foreign national, defendant was

first processed by Immigration. His wife and children,

American citizens, proceeded directly to Customs inspection.

-3-
3

After going through Immigration, defendant went to Customs

where he was interviewed by Inspector Cheryl B. Gaffney.

Inspector Gaffney asked defendant the standard

Customs questions: where he had been on the trip, where he

lived, how long he was gone, and the purpose of his visit.

In response, defendant stated that he had not travelled to

Iran at any time during his trip and that he had not been to

Iran in six or seven years. He also stated that he was

travelling alone and gave Gaffney his Customs Declaration

which indicated that he was travelling alone. After the

interview, defendant was taken by Gaffney and Inspectors

McGrath and Bird to another room for further questioning and

a possible search.

Defendant's wife, Lori Ann McBride, and their two

children, went to a different Customs line than defendant.

She was interviewed by Inspector Pacewicz to whom she gave

her Customs Declaration and her passport and those of her

children. Following routine procedures for international

travelers, Pacewicz made a Treasury Enforcement

Communications System check on McBride to determine if she

was a fugitive or was being sought by law enforcement

officials. The check showed that there was an outstanding

warrant for McBride's arrest in California on a parental

-4-
4

kidnapping charge.1 Defendant knew of the outstanding

warrant against his wife.

After Inspector Pacewicz learned of the warrant, he

asked McBride and the children to go to a nearby examination

table. At about the same time, defendant passed the

examination table under escort of Inspectors Gaffney, Bird

and McGrath. According to Pacewicz, McBride became "very

nervous" on seeing defendant. This prompted Pacewicz to take

her to a search room other than the one to which defendant

was being escorted. Almost immediately on entering the room,

McBride removed five packages from her coat and threw them on

the table, saying, "I don't know what this is. My husband

made me carry them, but I know it was something bad." After

the packages had been thrown on the table, Inspector

Pacewicz found that the contents tested positive for heroin.

Sometime later, Special Agent Joseph Desmond of the

Drug Enforcement Agency ("DEA") came to the Customs area. He

talked to Inspector Pacewicz and then talked to McBride for

about fifteen minutes. Desmond then went to interview

defendant. Before questioning defendant, Desmond advised him

of his Miranda rights. Defendant said he understood his

rights, but did not understand why he or his wife were being

1. The oldest child of defendant and McBride had been placed
in the custody of the California Department of Social
Services by the San Diego County, California, Juvenile Court.
The arrest warrant was issued after McBride took the child in
violation of the custody order.

-5-
5

held. Desmond then ended his discussion with defendant and

began processing McBride and making arrangements for their

two children.

While so occupied, Desmond was informed that

defendant wanted to see him. Desmond and defendant then had

an extended conversation. Defendant told Desmond that he

obtained the "opium" in Germany from an Iranian named

Mohammed Ali Karabolout. He said that he was to be paid

$3,000 if he delivered the opium to one Parviz Parvin in San

Francisco. Defendant told Desmond that Parvin was a "large

heroin dealer."2

Desmond talked to defendant again after his arrest.

Defendant repeated what he had told him before about where

and from whom he had obtained the "opium" and how much he was

to be paid for delivering it. Desmond and defendant then

discussed carrying out a controlled delivery whereby Parvin

would be arrested after defendant made the delivery. After

considering the plan in detail and after consulting with an

attorney, defendant told Desmond that he did not want to

participate in the controlled delivery to Parvin.

2. On direct examination at trial, the defendant testified
that he had been temporarily in Iran. When he and his family
left Iran, a friend, George Shalmarez, who had lived in the
United States, drove them from Iran to Turkey. George asked
defendant to deliver packages of "cancer medicine" called
"shireb" to a sick friend, Parviz Parvin, in San Francisco.
George also told him that Parvin ran a limousine service in
San Francisco and might give him a job as a driver.

-6-
6

The district court held a pre-trial suppression

hearing on both McBride's and defendant's motions to suppress

their oral and written statements and certain physical

evidence. The motions were denied as to defendant, but were

partially granted as to McBride. After McBride pled guilty,

the prosecutor moved to admit certain evidence including

McBride's statement made when she threw the packages of

contraband onto the table in the Customs examination room.

The court suppressed McBride's statement and it was not

mentioned at trial although the Customs inspector described

her actions.

III.

Analysis

Defendant raises three issues on appeal. He first

challenges parts of the prosecutor's closing argument on the

following grounds: (1) an impermissible reference to excluded

evidence; (2) argument of matters based on the prosecutor's

personal belief and opinion and knowledge of matters not in

evidence; (3) an attempt to inflame passions or prejudice of

the jury; and (4) a misrepresentation of defendant's finances

to suggest a motive for the crime. In addition, defendant

appeals the district court's denial of his motion for a

continuance, and the court's decision to admit evidence at

trial which was not disclosed to defendant until three days

before trial.

-7-
7

A. Prosecutor's Closing Argument

Because defendant failed to object at trial to the

prosecutor's statements made in closing argument, we review

defendant's claims on appeal under the plain error standard.

United States v. Young, 470 U.S. 1, 6, 14-15 (1985); United

States v. Rodriguez-Cardona, 924 F.2d 1148, 1154 (1st. Cir.),

cert. denied, 112 S. Ct. 54 (1991); Fed. R. Crim. P. 52(b)3.

The plain error exception is to be used "`sparingly, solely

in circumstances in which a miscarriage of justice would

otherwise result.'" Young, 470 U.S. at 15 (quoting United

States v. Frady, 456 U.S. at 163 n.14). We consider the

prosecutor's statements in the context of the entire trial.

United States v. Morales-Cartagena, 987 F.2d 849, 854 (1st

Cir. 1993); United States v. Smith, 982 F.2d 681, 682 (1st

Cir. 1993); Rodriguez-Cardona, 924 F.2d at 1154. Three

significant factors guide our evaluation of whether the trial

was so tainted by prosecutorial misconduct in argument as to

constitute plain error: "(1) whether the prosecutor's

conduct was isolated and/or deliberate; (2) whether the trial

court gave a strong and explicit cautionary instruction; and

(3) whether it is likely that any prejudice surviving the

judge's instruction could have affected the outcome of the

3. Fed. R. Crim. P. 52(b) provides as follows:
Plain Error. Plain errors or defects
affecting substantial rights may be
noticed although they were not brought to
the attention of the court.

-8-
8

case." United States v. Hodge-Balwing, 952 F.2d 607, 610

(1st Cir. 1991); see also Morales-Cartagena, 987 F.2d at 954.

With these tenets in mind, we address each of defendant's

allegations of misstatement by the prosecutor to determine

whether there was error, and then we assess the aggregate

effect on the trial as a whole.

1. Alleged Reliance on Evidence Excluded From Trial

Defendant claims that the prosecutor's closing

argument relied on evidence that had been excluded from the

trial as hearsay. Before trial, the court suppressed

McBride's statement, made during the Customs examination as

she emptied packages from her coat onto a table, "I don't

know what this is. My husband made me carry them, but I know

it was something bad." The court found that the statement

was inadmissible hearsay because McBride was available to

testify, and her knowledge of the contents of the packages

was being offered to establish defendant's knowledge through

a statement which was not in furtherance of their alleged

conspiracy.

At trial, Customs Inspector Pacewicz, who was in

the search room with McBride, recounted McBride's actions of

removing the packages from her coat, and did not mention her

previously excluded statement. Defendant did not object to

this testimony and does not now claim that allowing

-9-
9

Pacewicz's testimony was error.4 Defendant's complaint is

with the way the prosecutor used the evidence in closing

argument. During closing argument, the prosecutor made the

following references to Inspector Pacewicz's testimony:

At that time Inspector Pacewicz took
Lori Ann McBride to another secondary
search room. As soon as Lori Ann McBride
entered the secondary search room she
dumped packages out of her coat.

I leave it to you, for example, to
decide what, if anything, that indicates
about what Lori Ann McBride might have
thought was in those packages.

Later in his argument the prosecutor stated:

You heard how Lori Ann McBride then
pulled the stuff out of her pockets and
dumped it on the table. Obviously, very
nervous, very agitated.

The Customs Declaration of the
defendant says he is travelling alone.
Was there some understanding between Lori
Ann McBride and the defendant? The
evidence, I suggest, shows clearly that
there was.

We note first that defendant's allegation that the

prosecutor used suppressed evidence in closing argument is

wrong. The prosecution fully adhered to the court's order

4. Defendant may be arguing, by implication, that Inspector
Pacewicz's testimony about McBride's actions was inadmissible
hearsay evidence of expressive conduct. Because defendant
has not directly raised this as an issue on appeal, we deem
it waived. United States v. Zannino, 895 F.2d 1, 17 (1st

Cir.) ("It is not enough merely to mention a possible
argument in the most skeletal way, leaving the court to do
counsel's work, create the ossature for the argument, and put
flesh on its bones."), cert. denied, 494 U.S. 1082 (1990).

-10-
10

excluding McBride's statement. The prosecutor's closing

argument recounted McBride's actions, not her suppressed

statement. Inspector Pacewicz also testified to her actions

and not her statement.

Defendant alternatively argues that by referring to

McBride's actions and asking the jury to draw inferences

based on her actions, the prosecutor was attempting to convey

the message, expressed by McBride's excluded statement, that

defendant knew that the packages contained contraband. The

prosecutor's reference to McBride's actions, defendant

argues, should have been excluded for the same reason that

the court excluded her statement.

The prosecutor's argument was not evidence in the

trial, as the district court properly instructed the jury.

Argument necessarily presents a partisan view of the evidence

admitted at trial. Although the prosecution may not

interject personal credibility or opinion into argument, the

prosecutor is entitled, in closing, to ask the jury to draw

warrantable inferences from the evidence admitted during

trial. Young, 470 U.S. at 7; United States v. Mount, 896

F.2d 612, 625 (1st Cir. 1990).

The prosecutor asked the jury to consider "what, if

anything" McBride's actions indicated about what she thought

was in the packages which she threw on the table. The

prosecutor later suggested that McBride's actions and

-11-
11

nervousness and defendant's Customs Declaration that he was

travelling alone indicated an understanding between McBride

and defendant. The evidence at trial established that

McBride threw the packages on the table in the Customs

examination room, that she was nervous during the Customs

examination, and that defendant claimed to be travelling

alone. Therefore, the prosecutor asked the jury to draw

warrantable inferences based upon the evidence at trial. We

find nothing improper in the prosecutor's reference to

McBride's actions in closing argument, and therefore we find

no error.

2. Argument of Matters Not in Evidence and Personal

Opinion

Next, defendant asserts impropriety in the

prosecutor's reference to defendant's decision not to go

ahead with the controlled delivery in which he had originally

agreed to participate.5 At trial, defendant testified that

his decision not to cooperate was motivated by his fear for

the safety of his wife and family. On cross-examination,

defendant admitted stating to DEA Agent Desmond in a letter

that Parvin was "the Al Capone of San Francisco" and that he

knew Parvin "to be the key of the whole drug supply for

5. When asked by DEA Agent Desmond to cooperate in a
controlled delivery of the packages containing heroin to
Parvin, the intended recipient of the "medicine" in San
Francisco, defendant initially agreed to participate and then
changed his mind.

-12-
12

California." The defendant continued to maintain his

innocence, however, claiming that he thought the packages

contained cancer medicine for Parvin, not heroin. In his

closing, the prosecutor made the following remarks:

Why, ladies and gentlemen, would he
not do it, [the controlled delivery] if
he was confident that at the other end of
the road there was someone waiting for
cancer medicine and not heroin? If in
fact, someone was waiting there for
cancer and medicine, he could have proved
his innocence and surely he knows that in
that instance he would not have been
prosecuted.

In his rebuttal, the prosecutor responded to the

defendant's closing thus:

Mr. Boudreau [the defense lawyer] just
said that I said in my closing argument
that the defendant would have been
prosecuted anyway, even if he effected
the controlled delivery. That was not my
point. My point was that if the
defendant is telling the truth, that the
person at the other end of the line,
Parvis Parvin, was waiting for medicine,
he could have proved his innocence by
effecting the delivery.

The defendant said he initially agreed
to do it because he wanted to show that
the person at the other end of the line
was waiting for medicine and not heroin.
Clearly, the defendant could not have
thought that if he effected the delivery
and the person was, in fact, waiting for
medicine and was sick with cancer, that
he would have been prosecuted.

I think that, clearly, he would not,
or clearly he would not have been
prosecuted if he had proved his innocence
in that manner.

-13-
13

Although he did not object at trial, defendant now

opposes the prosecutor's statements on two bases: that the

statements refer to matters not in evidence and that the

statements assert the personal beliefs of the prosecutor. It

is improper for a prosecutor, in argument, to refer to or to

seem to rely on matters not in evidence. Smith, 982 F.2d at

683. It is also improper for a prosecutor to insert his own

credibility or opinions into argument. Id.; Mount, 896 F.2d

at 625. Defendant contends that the prosecutor's remarks

impermissibly suggested that he knew something not introduced

at trial which determined whether or not defendant would have

been prosecuted and also interjected his personal opinion

about defendant's actions.

The prosecutor may have overstepped the boundaries

of permissible argument by offering his opinion, "I think

that, clearly he would not, or clearly he would not have been

prosecuted if he had proved his innocence in that manner."6

If so, the transgression does not constitute plain error in

the context of the trial as a whole. The prosecutor did not

routinely insert his personal opinion into the argument nor

do we find that his remark was deliberate. Although the

court did not give a cautionary instruction, we find that

6. The prosecutor, apparently, was attempting to make the
point that defendant refused to cooperate in the controlled
delivery to Parvin because he knew that the circumstances of
the delivery would not clear him of the crimes charged and,
therefore, he would be prosecuted anyway.

-14-
14

little, if any, prejudice resulted. The prosecution's

argument about the implications of defendant's choice not to

participate in the controlled delivery was merely cumulative

of other evidence including defendant's confessions, admitted

at trial and argued in closing, which showed defendant's

knowledge that the packages contained heroin and not cancer

medicine. Therefore, the remark was not so severely

prejudicial as to undermine defendant's substantial rights or

the fairness of the trial as a whole.

Defendant also claims that the prosecutor's

argument as quoted above impermissibly shifted the burden to

defendant to prove his innocence. We do not agree. Further,

the court gave a sufficient charge on the presumption of

innocence to dispel any improper suggestion which the jury

might have taken from the argument.7

3. Inflammatory Remarks

7. On the government's burden of proof, the court instructed
as follows:
The law presumes a defendant to be
innocent of a crime. Thus, defendant,
although accused, begins the trial with a
clean slate, with no evidence against
him, and the law permits nothing but
legal evidence presented before the jury
to be considered in support of any charge
against the defendant. So the
presumption of innocence alone is
sufficient to acquit a defendant unless
the jurors are satisfied beyond a
reasonable doubt of the defendant's guilt
after a careful and impartial
consideration of all the evidence in the
case.

-15-
15

Defense counsel argued in closing that defendant's

failure to hide the packages of contraband in suitcases or in

hidden compartments indicated his innocence. The prosecutor

answered in rebuttal as follows:

Finally, ladies and gentlemen, Mr.
Boudreau suggests that the defendant, if
he knew he was smuggling in heroin would
have found a secret compartment in the
luggage to carry the heroin. I suggest
that the defendant did find a secret
compartment. He found a secret
compartment in his American wife who he
thought would not be searched because she
was an American wife with two small
children, and that is the secret
compartment that he found and attempted
unsuccessfully to use.

Defendant now argues that the prosecutor's references to

defendant's American wife were intended to inflame the jury's

passions and prejudices against defendant who is Iranian.

There is no doubt that argument which is intended to appeal

to emotions rather than to reason is improper. United States

v. Moreno, No. 92-2018, slip op. at 10-11 (1st Cir. May 6,

1993); United States v. Johnson, 952 F.2d 565, 574 (1st Cir.

1991), cert. denied, 113 S. Ct. 58 (1992); United States v.

Giry, 818 F.2d 120, 132-33 (1st Cir.), cert. denied, 484 U.S.

855 (1987). That is not the case here, however. Although

the prosecutor's remarks, taken in isolation, might suggest

an appeal to the passions of the jury, when his remarks are

taken in context, any such tactic vanishes. The prosecutor

was countering the defense by arguing that defendant may have

-16-
16

assumed that his American wife would have an easier passage

through Customs than he would, and used that advantage for

smuggling the packages of heroin. Further, the court gave

the following cautionary instruction:

The fact that the defendant in this
case is not a citizen of the United
States and is by birth an Iranian should
not prejudice you for or against him, but
he should be treated like any other
defendant, and your verdicts should be
based on the evidence that has been
introduced before you in this case.

Reading the prosecutor's remarks in context and in light of

the defense's closing argument, we find no impropriety in the

statement. If any prejudice was communicated, the court

cautioned the jury not to allow bias about nationality to

influence its decision.

4. Financial Motive for the Crime

In response to defendant's claim that he had no

motive to commit the crime of importing heroin, the

prosecution argued that defendant, and his family, had only

$700 when they entered the United States. The amount was

based upon the combined Customs Declarations of defendant and

McBride. Defendant admitted that he had been promised $3,000

if he delivered the contraband to Parvin. The prosecution

argued that the promised payment provided a financial motive

for defendant to import the heroin. Defendant now asserts

that he had $1,456 in traveller's checks with him when he

entered the United States which the government seized when he

-17-
17

was arrested. The government notes that after reviewing their

files they agree with defendant. Defendant argues that the

prosecution's imputed financial motive was improper given the

traveller's checks. Defendant failed to raise the argument

at trial and failed to mention the traveller's checks during

his testimony at trial. There is no suggestion that the

prosecution deliberately misrepresented defendant's financial

condition. Further, $3,000 remains a financial incentive,

although perhaps of somewhat less significance. Therefore,

we find the prosecution's argument of financial motive was

proper under these circumstances.

5. No Plain Error

We have found that the prosecutor's closing

argument was, for the most part, proper. In the context of

the entire trial, we find that the aggregate impact of any

impropriety was minimal and did not cause a miscarriage of

justice. Therefore, the trial was not marred by plain error.

B. Denial of Motion for Continuance

The defendant appeals the district court's denial

of his motion for continuance to allow time in which to

obtain additional corroborative evidence. We previously

considered this issue in defendant's appeal from denial of

his 28 U.S.C. 2255 petition. At that time, defendant

claimed ineffective assistance of counsel due, in part, to

his counsel's failure to timely file the motion for

-18-
18

continuance. After trial and before the 2255 appeal,

defendant obtained from Iran a police report of a statement

by Ali Karabolout, one of the people involved with defendant

in Iran, which defendant had hoped to present at trial.

Defendant submitted the police report to this court. We

reviewed the substance of Karabolout's statement and

concluded that it was hearsay. We found that Karabolout's

statement was not against significant penal interest, as it

was more exculpatory than inculpatory, and that it lacked

sufficient other indicia of reliability to obligate the

district court to find that it fell within any exception to

the hearsay rule. We concluded that the documents from Iran

were not admissible in evidence and, therefore, late filing

of the motion for continuance did not prejudice defendant.

Tajeddini, 945 F.2d at 463-65.

Defendant now requests that we reconsider our

decision on the ground that we previously misunderstood the

effect of Iranian law on Karabolout which would result from

his statement to Iranian police. We decline to do so. This

appeal is, of course, not an appropriate method to move for

reconsideration of our previous decision. See Fed. R. App.

P. 40.8 Further, when a legal issue has been presented to

8. After our decision and the mandate to the district court
was issued, the defendant filed several petitions for
extensions of time to file a motion for rehearing and a
request for recall of mandate. His petitions and requests
were denied because he failed to demonstrate any errors in

-19-
19

and decided by this court, our decision becomes the law of

the case in all subsequent proceedings on the same matter.

United States v. Rivera-Martinez, 931 F.2d 148, 150-52 (1st

Cir.), cert. denied, 112 S. Ct. 184 (1991); United States v.

Rosen, 929 F.2d 839, 842 (1st Cir.), cert. denied, 112 S. Ct.

77 (1991); United States v. Latorre, 922 F.2d 1, 9 (1st Cir.

1990), cert. denied, 112 S. Ct. 217 (1991).

A court's determination of foreign law is treated

as a ruling on a question of law. Fed. R. Crim. Pro. 26.1.

Although we retain the power to reopen a question of law

previously decided, it is our practice to do so only in

extraordinary circumstances such as when "'[(1)] the evidence

presented in a subsequent trial was substantially different,

[(2)] controlling authority has since made a contrary

decision of the law applicable to such issues, or [(3)] the

decision was clearly erroneous and would work a manifest

injustice.'" Rivera-Martinez, 931 F.2d at 151 (quoting White

v. Murtha, 377 F.2d 428, 432 (5th Cir. 1967)); see also

Morgan v. Burke, 926 F.2d 86, 91 (1st Cir. 1991), cert.

denied, 112 S. Ct. 1664 (1992).

Extraordinary circumstances do not exist in this

case. Defendant makes no argument that substantially

different evidence on this issue was presented at the

our opinion.

-20-
20

district court hearing prior to this appeal, or that

controlling authority has changed since our prior opinion.

We are unconvinced by defendant's argument that Iranian law,

as offered by defendant,9 requires us to change our

decision on this issue. Therefore, our prior holding that

Karabolout's statement was inadmissible hearsay was neither

clearly erroneous nor did it constitute a manifest injustice,

and there is no reason to disturb it.

C. Delayed Discovery Disclosure

Defendant assigns as error the district court's

decision to allow the government to introduce statements made

by defendant to Customs inspectors although the statements

were not disclosed to the defense until three days before

trial. Defendant claims that the late disclosure of the

statements violated Fed. R. Crim. P. 16 and was prejudicial

to his defense. We disagree.

9. The defendant has submitted a letter from the director of
the Interests Section of the Islamic Republic of Iran at the
Embassy of Pakistan which is signed for the director by
someone else. The letter expresses an opinion, based on a
letter from defendant's attorney, that the proceedings in
Iran against Karabolout were only temporarily suspended, and
that Karabolout may be exposed to criminal or civil penalties
based on his statement to the Iranian police. Although we
are not bound by the rules of evidence in considering proof
of foreign law, the defendant's submission is inadequate to
inform this court of Iranian law allegedly relevant to this
matter.

-21-
21

Rule 16(a)(1), in the version in effect at the time

of defendant's trial, required the government to disclose

certain evidence prior to trial:

Upon request of a defendant the
government shall permit the defendant to
inspect and copy or photograph: any
relevant written or recorded statements
made by the defendant, or copies thereof,
within the possession, custody or control
of the government, the existence of which
is known, or by the exercise of due
diligence may become known, to the
attorney of the government; the substance
of any oral statement which the
government intends to offer in evidence
at the trial made by the defendant
whether before or after arrest in
response to interrogation by any person
then known by the defendant to be a
government agent . . . ."

Fed. R. Crim. P. 16(a)(1)(A); see also U.S. Dist. Ct. Mass.

R. 116.1 (Automatic Discovery in Criminal Cases). Rule 16(c)

imposes a continuing obligation on all parties to disclose

other evidence or material previously requested and subject

to the rule. If a party fails to provide discovery as

required by Rule 16, the district court may impose remedial

measures or sanctions including prohibiting the violating

party from introducing the evidence at trial. Fed. R. Crim.

P. 16(d)(2). In exercising its discretion to control

discovery rule violations, the district court must inquire

into the surrounding circumstances to determine whether the

violating party acted in bad faith. Id.; United States v.

Samalot Perez, 767 F.2d 1, 4 (1st Cir. 1985). Our review of

-22-
22

a district court's rulings on discovery matters is to

determine whether the court abused its discretion. United

States v. Alvarez, 987 F.2d 77, 85 (1st Cir. 1993). To

obtain reversal, the defendant must prove that the district

court abused its discretion which resulted in prejudice to

the defense. Alvarez, 987 F.2d at 85; United States v.

Nickens, 955 F.2d 112, 126 (1st Cir.), cert. denied, 113 S.

Ct. 108 (1992).

Defendant objects to the government's use of two

oral statements he made in response to questioning by a

Customs inspector. Answering routine questions of where he

was arriving from and with whom he was travelling, defendant

said that he had not been in Iran for six or seven years and

that he was travelling alone. Both of those statements were

false. During a hearing on preliminary matters

at the beginning of the trial, the district court questioned

the government as to why the statements were not disclosed to

defense counsel in a timely manner. The government responded

that the statements were unknown to them until the day before

they were disclosed to defense counsel, three days before

trial. The next day, before testimony began, defense counsel

asked the court to suppress the statements on the grounds

that the late disclosure, three days before trial, had

-23-
23

prejudiced his opportunity for a suppression hearing.10

The district court conditionally ruled that the two

statements were admissible. The court cautioned that if

testimony during trial showed that there was a basis for

suppression, he would halt the trial and hold a suppression

hearing. When the government alerted the court that it was

about to elicit testimony from Inspector Gaffney about

defendant's statements, the court directed the government to

proceed with the questions. Defense counsel objected and the

court overruled the objection without elaboration.

On appeal, defendant argues that the late

disclosure of the statements by the government deprived him

of an opportunity to attempt to suppress the statements. He

contends that the statements should have been suppressed

because he was not given Miranda warnings before the

questioning which produced the statements. Defendant's

theory is that if the inspector who processed McBride through

Customs became aware of the warrant for her arrest and her

relationship to defendant before another inspector questioned

defendant, then there was a basis for detaining defendant and

he was entitled to Miranda warnings before being questioned.

10. A suppression hearing was held before trial on other
matters.

-24-
24

The right to Miranda warnings attaches in a

custodial or coercive situation. Oregon v. Elstad, 470 U.S.

298, 309 (1985); United States v. Masse, 816 F.2d 805, 809

(1st Cir. 1987). Neither suspicion nor probable cause to

arrest, without action to restrain the suspect, invoke the

requirement for Miranda warnings. United States v. McDowell,

918 F.2d 1004, 1008 (1st Cir. 1990); United States v. Mejia,

720 F.2d 1378, 1381 (5th Cir. 1983); United States v. Silva,

715 F.2d 43, 46-48 (2d Cir. 1983). Routine Customs

questioning does not require Miranda warnings. United States

v. Pratt, 645 F.2d 89, 90-91 (1st Cir.), cert. denied, 454

U.S. 881 (1981). Even if the circumstances hypothesized by

defendant had occurred, defendant was not entitled to Miranda

warnings before answering routine Customs questions.

Therefore, the false statements made by defendant in response

to the Customs inspector's questions were properly admitted

into evidence.

There is no question that the statements were

disclosed to defendant long past the discovery deadline.

Defendant does not argue that the government acted in bad

faith, however, and the court's inquiry concerning why the

government's disclosure was delayed does not reveal evidence

of bad faith by the government. Defendant has not shown that

the delay prejudiced his defense by impairing his opportunity

to suppress the statements. The court heard testimony at

-25-
25

trial from the Customs inspectors involved with defendant and

McBride, and found that a suppression hearing was unnecessary

before defendant's statements were admitted. Therefore, we

find no abuse of the court's discretion to control discovery

violations and no resulting prejudice to the defendant.

Defendant's request that this issue be remanded to the

district court for a suppression hearing is denied.

Affirmed.

-26-
26