**UNITED STATES, Appellee,**

v.

**Gregg M. PAQUETTE, Defendant, Appellant.**

**No. 98–2131.**

United States Court of Appeals, First Circuit.

Heard Oct. 8, 1999.

Decided Feb. 7, 2000.

Mark W. Griffin for appellant.

F. Mark Terison, Assistant U.S. Attorney, with whom Jay P. McCloskey, U.S. Attorney, was on brief for appellee.

Before TORRUELLA, Chief Judge, LYNCH and LIPEZ, Circuit Judges.

LIPEZ, Circuit Judge.

Gregg M. Paquette appeals from his conviction and sentence, entered after a jury trial in the district court for the District of Maine, for conspiracy to commit mail and wire fraud, 18 U.S.C. §§ 371, 1341, 1343, and making a false income tax return, 26 U.S.C. § 7206(1). Finding no merit to his challenges to the district court's jury instructions and its calculation of the amount of loss caused by the conspiracy, we affirm.

Paquette was found guilty of conspiring with David Page, former tax assessor of the Town of Kittery, Maine, to deprive the citizens of Kittery of Page's honest services. *See* 18 U.S.C. § 1346. Paquette acted as an intermediary between Page and certain Kittery taxpayers to whom Page granted favorable revaluations and

tax abatements [1] in exchange for kickbacks that were paid to Paquette and split between Paquette and Page. Page pled guilty to conspiracy and other federal crimes and testified for the government at Paquette's trial.

After Paquette was convicted, the district court separately sentenced Page and Paquette, finding in both cases that the amount of loss to the Town attributable to the conspiracy was $736,066.24. Page appealed his sentence, and a panel of this Court affirmed in an unpublished summary disposition, finding no clear error in the district court's loss calculation. *See United States v. Page*, 181 F.3d 81, 1999 WL 525943 (1st Cir.1999). For Paquette, that loss calculation led to a ten-level increase pursuant to U.S.S.G. § 2F1.1(b)(1)(K) (add ten for loss of more than $500,000). Added to a base offense level of six, *see id.* § 2F1.1(a), and a two-level increase for more than minimal planning, *see id.* § 2F1.1(b)(2), that ten-level increase resulted in an offense level of eighteen and a guideline sentencing range of twenty-seven to thirty-three months. The district court sentenced Paquette to twenty-seven months imprisonment and ordered him to pay the Town $736,066.00 in restitution.

■ Paquette's appeal of his conviction is limited to a challenge to the jury instructions. He argues that the instructions allowed the jury to convict him of conspiracy to defraud the Town if it simply believed that Page had failed to disclose a conflict of interest, without finding that Paquette intended to deprive the Town of Page's honest services. Paquette misreads the instructions; the district court correctly told the jury that "the government must prove that the object of the scheme was to deprive the public of tax assessor David Page's honest services,"

and correctly gave bribery and failure to disclose a conflict of interest as possible examples of such a deprivation. *See United States v. Sawyer*, 85 F.3d 713, 724–25 (1st Cir.1996) ("[I]f a non-public-official is prosecuted for scheming to defraud the public of an official's honest services, the government must prove that the target of the scheme is the deprivation of the official's honest services."). There was no error in the court's jury charge.

■ In his sentence appeal, Paquette raises two challenges to the district court's loss calculation. He argues first that a loss of property cannot be found when a defendant has been prosecuted on a theory that he deprived the victim of "honest services." This argument is foreclosed by U.S.S.G. § 2C1.7, entitled "Fraud involving deprivation of the intangible right to the honest services of public officials...." That guideline states in subsection (b)(1)(A): "If the loss to the government ... exceeded $2,000, increase by the corresponding number of levels from the table in § 2F1.1 (Fraud or Deceit)...." Thus the guidelines clearly contemplate that a sentence can be enhanced for loss to the government even when the defendant was charged with "honest services" fraud.

■ Paquette also argues that if a loss calculation was appropriate, the district court committed clear error by calculating the loss as $736,066.24, the amount of the revaluations and abatements granted by Page to several Kittery taxpayers as part of the fraudulent scheme. The government argues that we should not address this contention because our rejection of the same argument in Page's appeal is the law of the case. We have held that our disposition of an issue on appeal is the law of the case in a subsequent appeal by a codefendant. *See United States v. Rosen*, 929 F.2d 839, 842 n. 5 (1st Cir.1991); *see also,*

---

1. Under Maine law, a taxpayer may request an "abatement" in property taxes only after a given year's tax list has been officially "committed" by the assessors to the tax collector. 36 M.R.S.A. §§ 709, 841(1). Because it ap-

pears that the large majority of the fraudulent reductions were granted by Page before the commitment of the tax list, we refer to "revaluations and abatements" rather than just abatements.

*e.g., United States v. Aramony,* 166 F.3d 655, 661 (4th Cir.1999) (rejecting defendant's challenge to loss calculation in sentencing on law of the case grounds where court of appeals had previously rejected same argument made by codefendant). Here, however, although Page and Paquette were, factually speaking, coconspirators, they were not codefendants in the same proceeding. Page pled guilty to an information, Paquette was charged in an indictment and convicted after a jury trial, and they were separately sentenced. Given our resolution of the merits, we need not determine the outer boundaries of the law of the case doctrine by applying it here.[2]

Paquette contends that the district court's loss figure overstates the actual loss to the Town because the assessments on some properties were excessive. As a result, he says, the fraudulently granted revaluations and abatements merely restored the properties to their fair valuations and the Town received all the tax revenue it was due. At sentencing, Paquette made the same argument, but did not dispute that the government had accurately tallied the amount of the revaluations and abatements.

■ Paquette actually makes two related arguments in challenging the district court's loss figure. He says first that the Town was not entitled to all of the lost tax revenues because some of the assessments were too high before the conspiracy took place. This argument is without merit even if it has a factual basis in the record (which we assume but do not decide). Under Maine law, "[a] town's assessment is presumed valid and the taxpayer must prove it manifestly wrong." *City of Biddeford v. Adams,* 727 A.2d 346, 349 (Me. 1999). The Town was therefore entitled to the tax revenue before Page and Paquette

corrupted the abatement process, and the conspiracy caused the Town to lose that revenue even if some taxpayers might have been able to prove the assessments manifestly wrong via an uncorrupted abatement process.

■ Paquette also alleges that Page intentionally inflated some of the property values as a part of the fraudulent scheme, thereby depriving these assessments of any presumption of validity. Page's subsequent revaluations and abatements, Paquette argues, merely reduced the assessments to the level they would have been absent the conspiracy, causing no net loss to the Town. Even if this contention raises a plausible legal issue (a question we do not decide), Paquette has not established an evidentiary basis for the issue. At the sentencing hearing he did not offer any evidence in support of his argument. On appeal, he points only to three portions of the trial transcript, all from the testimony of David Page. In the first, Page testified that on one occasion he increased the assessment of a large industrial taxpayer, BOC Group, by approximately $12 million, with the intent of granting a large abatement and thus gaining a large kickback. He also testified, however, that when BOC protested he reduced the assessment again, and the record indicates that this reduction was not included in the total loss figure found by the district court. In the second passage cited by Paquette, Page testified that he had initially increased the assessments of several large commercial taxpayers ("the malls") because he honestly believed them to be undervalued; in the third, he testified that the revaluations and abatements he granted to the same taxpayers were "defensible" and "justified." These last two passages, in addition to being contradictory, are relevant only to the argument that some assessments were

---

**2.** Even if we were to hold that *Page* is the law of the case here, we would still need to make a limited evaluation of the merits of this appeal. The law of the case is not binding in a later proceeding if "the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary

decision of the law applicable to such issues, *or the decision was clearly erroneous and would work a manifest injustice." Rosen,* 929 F.2d at 842 n. 5 (emphasis added) (quoting *White v. Murtha,* 377 F.2d 428, 431–32 (5th Cir.1967)).

44

too high apart from any fraudulent scheme. They do not support Paquette's claim that Page inflated property tax assessments as a part of their fraudulent scheme. Similarly, in the portion of his brief devoted to his jury instruction argument, Paquette states that "David Page, the government's chief witness, has always contended that the properties he abated taxes on were legitimately overvalued and that the taxes on them should be abated"—a statement plainly inconsistent with Paquette's argument that Page intentionally inflated the assessments.

The guideline commentary notes that "the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2F1.1 cmt. 8 (1997 ed.). That is exactly what the district court did here. On the basis of the evidence presented, it concluded that the loss to the Town was equal to the amount of the revaluations and abatements. What we said in *Page* is equally true here: "Given the information available to the district court, [its loss] estimate reasonably accounted for the direct reduction in the town's tax revenues occasioned by defendant's fraudulent conduct." 181 F.3d 81, 1999 WL 525943, at *1.

Finally, Paquette objects to the district court's order of restitution. He argues that 18 U.S.C. § 3663A(c)(1) (making restitution mandatory for "an offense against property under this title, including one committed by fraud or deceit . . . in which an identifiable victim or victims has suffered . . . pecuniary loss") does not apply, but only because he contends that pecuniary loss to a victim was not proved. Since, as explained above, the government sufficiently proved the amount of the Town's loss, § 3663A applies and the court was required to order restitution without regard to Paquette's ability to pay.

*Affirmed.*