USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-2131

 UNITED STATES,

 Appellee,

 v.

 GREGG M. PAQUETTE,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. D. Brock Hornby, U.S. District Judge]

 Before

 Torruella, Chief Judge,
 Lynch and Lipez, Circuit Judges.
 
 
 
 
 Mark W. Griffin for appellant.
 F. Mark Terison, Assistant U.S. Attorney, with whom Jay P.
McCloskey, U.S. Attorney, was on brief for appellee.

February 7, 2000

 
 

 LIPEZ, Circuit Judge. Gregg M. Paquette appeals from his
conviction and sentence, entered after a jury trial in the district
court for the District of Maine, for conspiracy to commit mail and
wire fraud, 18 U.S.C. 371, 1341, 1343, and making a false income
tax return, 26 U.S.C. 7206(1). Finding no merit to his
challenges to the district court's jury instructions and its
calculation of the amount of loss caused by the conspiracy, we
affirm.
 Paquette was found guilty of conspiring with David Page,
former tax assessor of the Town of Kittery, Maine, to deprive the
citizens of Kittery of Page's honest services. See 18 U.S.C.
 1346. Paquette acted as an intermediary between Page and certain
Kittery taxpayers to whom Page granted favorable revaluations and
tax abatements in exchange for kickbacks that were paid to
Paquette and split between Paquette and Page. Page pled guilty to
conspiracy and other federal crimes and testified for the
government at Paquette's trial.
 After Paquette was convicted, the district court
separately sentenced Page and Paquette, finding in both cases that
the amount of loss to the Town attributable to the conspiracy was
$736,066.24. Page appealed his sentence, and a panel of this Court
affirmed in an unpublished summary disposition, finding no clear
error in the district court's loss calculation. See United States
v. Page, 181 F.3d 81 (table), 1999 WL 525943 (1st Cir. 1999). For
Paquette, that loss calculation led to a ten-level increase
pursuant to U.S.S.G. 2F1.1(b)(1)(K) (add ten for loss of more
than $500,000). Added to a base offense level of six, see id.
 2F1.1(a), and a two-level increase for more than minimal
planning, see id. 2F1.1(b)(2), that ten-level increase resulted
in an offense level of eighteen and a guideline sentencing range of
twenty-seven to thirty-three months. The district court sentenced
Paquette to twenty-seven months imprisonment and ordered him to pay
the Town $736,066.00 in restitution.
 Paquette's appeal of his conviction is limited to a
challenge to the jury instructions. He argues that the
instructions allowed the jury to convict him of conspiracy to
defraud the Town if it simply believed that Page had failed to
disclose a conflict of interest, without finding that Paquette
intended to deprive the Town of Page's honest services. Paquette
misreads the instructions; the district court correctly told the
jury that "the government must prove that the object of the scheme
was to deprive the public of tax assessor David Page's honest
services," and correctly gave bribery and failure to disclose a
conflict of interest as possible examples of such a deprivation. 
See United States v. Sawyer, 85 F.3d 713, 724-25 (1st Cir. 1996)
("[I]f a non-public-official is prosecuted for scheming to defraud
the public of an official's honest services, the government must
prove that the target of the scheme is the deprivation of the
official's honest services."). There was no error in the court's
jury charge.
 In his sentence appeal, Paquette raises two challenges to
the district court's loss calculation. He argues first that a loss
of property cannot be found when a defendant has been prosecuted on
a theory that he deprived the victim of "honest services." This
argument is foreclosed by U.S.S.G. 2C1.7, entitled "Fraud
involving deprivation of the intangible right to the honest
services of public officials . . . ." That guideline states in
subsection (b)(1)(A): "If the loss to the government . . . exceeded
$2,000, increase by the corresponding number of levels from the
table in 2F1.1 (Fraud or Deceit) . . . ." Thus the guidelines
clearly contemplate that a sentence can be enhanced for loss to the
government even when the defendant was charged with "honest
services" fraud.
 Paquette also argues that if a loss calculation was
appropriate, the district court committed clear error by
calculating the loss as $736,066.24, the amount of the revaluations
and abatements granted by Page to several Kittery taxpayers as part
of the fraudulent scheme. The government argues that we should not
address this contention because our rejection of the same argument
in Page's appeal is the law of the case. We have held that our
disposition of an issue on appeal is the law of the case in a
subsequent appeal by a codefendant. See United States v. Rosen,
929 F.2d 839, 842 n.5 (1st Cir. 1991); see also, e.g., United
States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999) (rejecting
defendant's challenge to loss calculation in sentencing on law of
the case grounds where court of appeals had previously rejected
same argument made by codefendant). Here, however, although Page
and Paquette were, factually speaking, coconspirators, they were
not codefendants in the same proceeding. Page pled guilty to an
information, Paquette was charged in an indictment and convicted
after a jury trial, and they were separately sentenced. Given our
resolution of the merits, we need not determine the outer
boundaries of the law of the case doctrine by applying it here.
 Paquette contends that the district court's loss figure
overstates the actual loss to the Town because the assessments on
some properties were excessive. As a result, he says, the
fraudulently granted revaluations and abatements merely restored
the properties to their fair valuations and the Town received all
the tax revenue it was due. At sentencing, Paquette made the same
argument, but did not dispute that the government had accurately
tallied the amount of the revaluations and abatements.
 Paquette actually makes two related arguments in
challenging the district court's loss figure. He says first that
the Town was not entitled to all of the lost tax revenues because
some of the assessments were too high before the conspiracy took
place. This argument is without merit even if it has a factual
basis in the record (which we assume but do not decide). Under
Maine law, "[a] town's assessment is presumed valid and the
taxpayer must prove it manifestly wrong." City of Biddeford v.
Adams, 727 A.2d 346, 349 (Me. 1999). The Town was therefore
entitled to the tax revenue before Page and Paquette corrupted the
abatement process, and the conspiracy caused the Town to lose that
revenue even if some taxpayers might have been able to prove the
assessments manifestly wrong via an uncorrupted abatement process.
 Paquette also alleges that Page intentionally inflated
some of the property values as a part of the fraudulent scheme,
thereby depriving these assessments of any presumption of validity. 
Page's subsequent revaluations and abatements, Paquette argues,
merely reduced the assessments to the level they would have been
absent the conspiracy, causing no net loss to the Town. Even if
this contention raises a plausible legal issue (a question we do
not decide), Paquette has not established an evidentiary basis for
the issue. At the sentencing hearing he did not offer any evidence
in support of his argument. On appeal, he points only to three
portions of the trial transcript, all from the testimony of David
Page. In the first, Page testified that on one occasion he
increased the assessment of a large industrial taxpayer, BOC Group,
by approximately $12 million, with the intent of granting a large
abatement and thus gaining a large kickback. He also testified,
however, that when BOC protested he reduced the assessment again,
and the record indicates that this reduction was not included in
the total loss figure found by the district court. In the second
passage cited by Paquette, Page testified that he had initially
increased the assessments of several large commercial taxpayers
("the malls") because he honestly believed them to be undervalued;
in the third, he testified that the revaluations and abatements he
granted to the same taxpayers were "defensible" and "justified." 
These last two passages, in addition to being contradictory, are
relevant only to the argument that some assessments were too high
apart from any fraudulent scheme. They do not support Paquette's
claim that Page inflated property tax assessments as a part of
their fraudulent scheme. Similarly, in the portion of his brief
devoted to his jury instruction argument, Paquette states that
"David Page, the government's chief witness, has always contended
that the properties he abated taxes on were legitimately overvalued
and that the taxes on them should be abated"--a statement plainly
inconsistent with Paquette's argument that Page intentionally
inflated the assessments.
 The guideline commentary notes that "the loss need not be
determined with precision. The court need only make a reasonable
estimate of the loss, given the available information." U.S.S.G.
 2F1.1 cmt. 8 (1997 ed.). That is exactly what the district court
did here. On the basis of the evidence presented, it concluded
that the loss to the Town was equal to the amount of the
revaluations and abatements. What we said in Page is equally true
here: "Given the information available to the district court, [its
loss] estimate reasonably accounted for the direct reduction in the
town's tax revenues occasioned by defendant's fraudulent conduct." 
181 F.3d 81 (table), 1999 WL 525943, at *1.
 Finally, Paquette objects to the district court's order
of restitution. He argues that 18 U.S.C. 3663A(c)(1) (making
restitution mandatory for "an offense against property under this
title, including one committed by fraud or deceit . . . in which an
identifiable victim or victims has suffered . . . pecuniary loss")
does not apply, but only because he contends that pecuniary loss to
a victim was not proved. Since, as explained above, the government
sufficiently proved the amount of the Town's loss, 3663A applies
and the court was required to order restitution without regard to
Paquette's ability to pay. 
 Affirmed.